

# The Attorney General of Texas

March 11, 1981

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Richard G. Morales, Sr.
Webb County Attorney
1810 San Bernardo
Laredo, Texas 78040

Opinion No. MW-301

Re: Administration of article 1066d, V.T.C.S., relating to tax incremental districts

Dear Mr. Morales:

You have requested our opinion regarding the construction and administration of Senate Bill 1211, Acts 1979, 66th Legislature, chapter 695, at 1661 (article 1066d, V.T.C.S.), which authorizes the creation of tax incremental districts by cities to undertake and finance certain municipal public works or improvements in areas in need of rehabilitation. A tax incremental district is an area within the city defined and created by municipal ordinance in accordance with article 1066d, V.T.C.S. Sec. 1(7). You have not raised and we do not address any questions regarding the constitutionality of the statute.

Your first question relates to section 4(a) of the act, which provides:

> A tax incremental district <u>may not be created if</u> before redevelopment under <u>this Act more than 10 percent of the real property</u> in the district, <u>excluding that dedicated to public use, is used for residential purposes.</u> (Emphasis added).

You inquire "whether the 10% of residential real property in the district should be determined by a <u>percentage of assessed values</u> or by 10% of the <u>total area</u> involved in the tax increment district?"

Section 4(a) imposes a qualification for the creation of a tax incremental district relating to the use to which the real property within the proposed district has been put. Section 3(a)(2)(E)(i) of the act provides that "not less than 25 percent by area of the real property within the district is a blighted area," and section 3(a)(2)(E)(iii) provides that "the aggregate assessed value of taxable property in the district according to the city's assessment plus all existing districts does not exceed 15 percent of the total assessed value of taxable property within the city according to the city's assessment roll."

In determining the qualifications and disqualifications for a designated area proposed to constitute a tax incremental district, the act speaks in terms of the nature of or various uses to which the real property is put. Only when discussing the total area proposed to comprise the district is assessed value mentioned, and then to determine the relativity of assessed value of all property within the district to all of that within the entire city. Section 1(6) of the act defines "the total assessed value of the property located within a tax incremental district" as the "[t] ax incremental base." Section 1(7) defines "[t] ax incremental district" as "a contiguous geographic area within a city."

There is no suggestion by context or otherwise in the act that "assessed value," rather than "area" should be used in determining the criteria for a district under section 4(a). Section 4(a) should be construed as stating the use to which the defined area must be put in order to be encompassed in a tax incremental district.

Your second question is as follows:

> When property is used for both residential and commercial purposes, how is the percentage of residential property determined?

In such cases, the percentage of residential property should be determined by the actual area set aside or occupied for residential purposes.

Your third question is as follows:

> Section 11(c) appears to be inconsistent with section 8(a) in that section 11(c) authorizes bond and note securities with a maximum maturity up to 20 years, while 8(a) authorizes payments of not to exceed 15 years. The question involved is: Which of the two provisions is controlling in so far as the issuance of bonded indebtedness is concerned?

This question suggests an apparent conflict between sections 8(a) and 11(c) of the act. Section 8(a) relates to the allocation of "[p] ositive tax increments" and provides that such allocations are made "to the applicable tax increment fund each year from the date when the district is created until the earlier of:

> (1) that time, after the completion of all public improvements specified in the plan or amendments, when the city has received aggregate tax increments of the district in an amount equal to the aggregate of all expenditures previously made or monetary obligations previously incurred for project costs for the district; or (2) 15 years after the last expenditure identified in the plan is made.

Section 8(b) provides that "[a] ll tax increments received in a tax incremental district shall be deposited in a special fund for the district."

Section 8(a) effectively states that the city may allocate positive tax increment revenues into the designated improvement fund for a period not to exceed that time after completion of the project when it has received sufficient funds to meet its total financial obligations for the project (including financing costs), or 15 years after the last expenditure is made on completion of the project itself, whichever is earlier. This section refers to the allotted period of time for the accumulation of funds to meet all of the financial obligations of the district, including funds for the retirement of bonds and notes.

Section 11(c) relates to "[t]ax incremental bonds or notes" and provides in pertinent part that:

> Tax incremental bonds or notes may not be issued in an amount exceeding the aggregate project costs. The bonds or notes shall mature over a period not exceeding 20 years from the date thereof.

Section 11(d) further provides that "[t]ax incremental bonds or notes are payable only out of the special fund created under Subsection (b) of Section 8 of this Act." (Emphasis added).

Sections 8(a) and (b) refer to the creation of a special fund and limit the time after completion of the project, or the last expenditures for completion of the project, in which positive tax increments may be deposited into the fund. Sections 11(c) and (d) refer to the time limit for maturity of bonds or notes issued to finance the costs of the project and the requirement that these be retired only out of the special fund.

These sections do not conflict, but have separate and distinct purposes — one relating to the limits for certain deposits into the special fund, the other relating to time limits for certain payments out of the fund.

## SUMMARY

In determining the 10 percent limitation imposed by section 7(a) of article 1066d, V.T.C.S., the calculation should be based on the actual geographic area used for residential purposes within the proposed tax incremental district. When property is used for both residential and commercial purposes, the percentage of residential property should be determined by the actual area used for residential purposes. There is no inconsistency between sections 8(a) and 11(c) of the act. Section 8(a) relates to time limitations for certain deposits into the special fund provided for in section 8(b). Section 11(c) relates to time limitations for the maturity of bonds and notes which are to be retired with funds paid out of the special fund provided for in section 8(b).

Very truly yours,

MARK   WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Bob Gammage
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
David B. Brooks
Bob Gammage
Rick Gilpin
C. Robert Heath
Robert T. Lewis
William G Reid
Bruce Youngblood